IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| MARC GUERRIER, *Plaintiff* | : : : | CIVIL ACTION |
| v. | : : | |
| STATE FARM, *Defendant* | : : : | NO. 19-2435 |

## MEMORANDUM

PRATTER, J.                                                                                        JUNE ____, 2022

A contract is a legal instrument designed to ensure each party holds up his end of the bargain. When one party fails to do so, he cannot expect the other party to pick up his slack and then blame that other party for failing to do so.

Under the terms of his car insurance contract, Marc Guerrier was required to notify State Farm if he was in an accident. Mr. Guerrier was in an accident with another driver also insured by State Farm. The other party made a claim; Mr. Guerrier did not. After Mr. Guerrier did not respond to State Farm's inquiry as to who his insurance carrier was, State Farm initiated subrogation proceedings against him. Now, many years later, Mr. Guerrier has sued State Farm for seeking subrogation, claiming that State Farm should have known that he was also one of State Farm's insureds. Mr. Guerrier admits that he never told State Farm that he was its insured. As a result, State Farm now moves for summary judgment. The Court agrees that no reasonable jury properly could return a verdict for Mr. Guerrier on these operative facts and, thus, grants State Farm's motion in full.

1

BACKGROUND

The relevant facts are not in dispute. Marc Guerrier was involved in a motor vehicle accident with another vehicle on March 30, 2009. At the time of the accident, State Farm insured Mr. Guerrier. At the time, Mr. Guerrier was driving a loaner car, a 2000 Mercedes owned by Blessing Auto Repair, because his car insured by State Farm, a 2000 Infiniti, was then being repaired. The Mercedes he was driving was insured by Stonington Insurance Company, which denied coverage for the accident.

The plain language of Mr. Guerrier's policy with State Farm required him to "give [State Farm] or one of [its] agents notice of the accident or loss as soon as reasonably possible." Compl., Ex. A, Doc. No. 1, at ECF 65 (emphases omitted). In his complaint, Mr. Guerrier claimed that he notified State Farm of the accident. Compl. ¶ 7, Doc. No. 1, at ECF 13. More than two years after he filed his complaint, however, Mr. Guerrier admitted that he had *not* reported this accident to State Farm. Doc. No. 32 ¶ 7, at ECF 6. He did not report it because, in his estimation, "it was not a[n] accident that needed to be reported. . . nothing happened." Nov. 19, 2021 Arb. Hrg., at 102:9–11, Doc. No. 30-6, at 7.

The driver of the other vehicle, Beverly Rogers, and her daughter and passenger, Karen Rogers, filed claims under Beverly's car insurance policy, which also happened to be with State Farm. State Farm initially paid $931.73 for the repairs to the Rogers' vehicle. On July 2, 2009, State Farm sent Mr. Guerrier a letter inquiring about any potential automobile liability coverage that he had. Mr. Guerrier claims that he never received this letter. The Rogers then filed uninsured motorist claims for medical bills under Ms. Rogers's policy with State Farm, and State Farm paid them a total of $41,000.

After having paid the Rogers and not having heard from Mr. Guerrier, State Farm initiated subrogation proceedings against him in 2011 for $41,931.73 (the amount for the injuries plus the

2

damage to the vehicle), culminating with default judgment against Mr. Guerrier in December 2015. Mr. Guerrier apparently did not learn about this default judgment until February 2017 when he went to renew his driver's license and was advised that he could not renew it because it was suspended due to his non-payment of the default judgment against him. He then filed a motion to reopen the default judgment. In September 2017, as part of reopening the judgment, Mr. Guerrier notified State Farm of the March 2009 accident. After investigating the accident, State Farm concluded that the repair shop's Mercedes was a qualified substitute vehicle under Mr. Guerrier's policy, such that his third-party liability insurance covered the payment initially made to the Rogers. Thus, State Farm discontinued its subrogation proceeding against Mr. Guerrier.[1]

After the resolution of the subrogation proceedings, Mr. Guerrier sued State Farm for breach of contract, bad faith, violations of the Pennsylvania Unfair Trade Practices Act, and wrongful use of civil process. He claims that State Farm had all of the information it needed to know that he was one of its insureds when the Rogers filed their claim with State Farm. In other words, his claims are based on both the subrogation proceeding and Mr. Guerrier's litigation to reopen the default judgment in state court.

State Farm removed this case to federal court. The case was resolved in arbitration, but Mr. Guerrier subsequently requested a trial *de novo*. State Farm now moves for summary judgment on all of Mr. Guerrier's claims. Mr. Guerrier opposes this motion. The motion is ripe for the Court's resolution.

---

[1] Mr. Guerrier suggests that the amount of money State Farm sought to recover in the default judgment against him in state court was improper. *See* Doc. No. 32 ¶ 10, at ECF 2 & ¶ 6, at ECF 6. Whether or not State Farm's complaint in state court demanded the proper figure, however, is not relevant at this stage. State Farm discontinued its subrogation against Mr. Guerrier and is no longer seeking to recover any of this money from Mr. Guerrier, meaning any claim about this dollar amount is moot. Instead, Mr. Guerrier is suing for the alleged damages he suffered as a result of the subrogation proceeding itself.

## LEGAL STANDARD

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). An issue is "genuine" if there is a sufficient evidentiary basis on which a reasonable jury could return a verdict for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A factual dispute is "material" if it "might affect the outcome of the suit under the governing law." *Id.*

The Court views the evidence presented in the light most favorable to the non-moving party. *Id.* at 255. However, "[u]nsupported assertions, conclusory allegations, or mere suspicions are insufficient to overcome a motion for summary judgment." *Betts v. New Castle Youth Dev. Ctr.*, 621 F.3d 249, 252 (3d Cir. 2010).

## DISCUSSION

State Farm argues that it is entitled to summary judgment because Mr. Guerrier admits that he never notified State Farm of the March 2009 accident until September 2017 when he sought to renew his driver's license. Mr. Guerrier counters that State Farm still should have known he was one of its insureds based on the information that the Rogers provided to State Farm, including the police report, which contained his name, address, date of birth, and driver's license number.

This action was removed to federal court under this Court's diversity jurisdiction. 28 U.S.C. §§ 1332, 1441. Mr. Guerrier's State Farm insurance contract choice-of-law provision specifies that Pennsylvania law will control, Doc. No. 1, at ECF 71, which this Court honors, *Kruzits v. Okuma Mach. Tool, Inc.*, 40 F.3d 52, 55 (3d Cir. 1994). Thus, this Court must predict what the Pennsylvania Supreme Court would do if presented with Mr. Guerrier's claims. *Baptiste v. Bethlehem Landfill Co.*, 965 F.3d 214, 225 (3d Cir. 2020). The Court addresses each count of Mr. Guerrier's complaint in turn.

## I.  There Is No Genuine Dispute That State Farm Did Not Act in Bad Faith

Mr. Guerrier asserts two separate claims for bad faith in his complaint, one under Pennsylvania's bad faith statute and one apparently separate from the statute. However, in Pennsylvania there is no common law right of action for bad faith separate from the statutory right of action established by 42 Pa. Cons. Stat. § 8371. *See Rancosky v. Wash. Nat'l Ins. Co.*, 170 A.3d 364, 372, 375 (Pa. 2017). Thus, the Court analyzes both of Mr. Guerrier's bad faith claims under the same statutory cause of action.

To state a claim for bad faith, a plaintiff "must demonstrate, by clear and convincing evidence, (1) that the insurer did not have a reasonable basis for denying benefits under the policy and (2) that the insurer knew or recklessly disregarded its lack of a reasonable basis in denying the claim." *Id.* at 377. Generally, bad faith claims arise when an insured *properly notifies the insurer of a claim* and the insurer then either fails to investigate, refuses to investigate, conducts a negligent investigation, or fails or refuses to pay all or part of the claim. *See, e.g., Rancosky v. Wash. Nat'l Ins. Co.*, 130 A.3d 79, 96–98 (Pa. Super. Ct. 2015) (discussing insurer's failure to conduct reasonable investigation of claim after claimant's notice to insurer); *Terletsky v. Prudential Prop. & Cas. Ins. Co.*, 649 A.2d 680, 689 (Pa. Super. Ct. 1994) (denying bad faith claim for injured parties who reported accident to insurer and received low settlement offer prior to arbitration). Nonetheless, bad faith claims extend beyond an insurer's denial of a claim and also extend to "the misconduct of an insurer during the pendency of litigation." *O'Donnell ex rel. Mitro v. Allstate Ins. Co.*, 734 A.2d 901, 906 (Pa. Super. Ct. 1999).

Here, Mr. Guerrier has not presented any evidence that State Farm acted unreasonably. To the contrary, State Farm "conducted a review or investigation *sufficiently thorough* to yield a reasonable foundation for its action." *Cantor v. Equitable Life Assur. Soc. of U.S.*, No. 97-cv-5711, 1999 WL 219786, at *3 (E.D. Pa. Apr. 12, 1999) (emphasis added). When the Rogers reported the

accident, State Farm investigated and sent a letter to Mr. Guerrier asking for the name of his insurance company. When State Farm did not receive any response, it assumed Mr. Guerrier was uninsured, and proceeded accordingly. To be sure, good faith and fair dealing is an ongoing obligation, and "[o]nce an insurer identifies a reasonable foundation for denying a claim, it is not relieved of its duty . . . ." *Condio v. Erie Ins. Co.*, 899 A.2d 1136, 1145 (Pa. Super. Ct. 2006). "[I]f evidence arises that discredits the insurer's reasonable basis, the insurer's duty of good faith and fair dealing requires it to reconsider its position and act accordingly." *Id.* Here, that is precisely what happened. Once Mr. Guerrier did contact State Farm about the March 2009 accident, State Farm investigated the claim and then discontinued its subrogation against Mr. Guerrier.

Instead, Mr. Guerrier says that State Farm had the information it needed in order to figure out that he was one of State Farm's insureds without him reporting anything. In Mr. Guerrier's view, State Farm should have taken the information given to it by the Rogers, including the information in the police report, and run that information through its own database to determine that Mr. Guerrier was insured by State Farm.[2] But that is not how insurance claims work.

Mr. Guerrier admittedly never notified State Farm; instead his argument is that the Rogers' claim was sufficient to count as notice to State Farm by him, too. True, a claim by one insured under her policy may suffice as notice to the insurer for other similarly situated injured parties. *See* 13 Steven Plitt, *et al., Couch on Insurance* § 187:62 (3d ed. 2021 Update). But that is not what happened here. Mr. Guerrier and the Rogers were not similarly situated parties. And the issue here is not whether Mr. Guerrier did or did not give notice to State Farm, but whether he *ever needed*

---

[2] Mr. Guerrier also suggests that State Farm *did*, in fact, know that he was one of State Farm's insureds, because his social security number was included on the Certificate of Judgment in the state court. This is pure speculation, which does not create a genuine dispute so as to defeat summary judgment. *Betts*, 621 F.3d at 252. Reasonable jurors could not infer that State Farm actually knew that Mr. Guerrier was its insured just because it had found his social security number.

6

*to do so* in the first place. Mr. Guerrier had a contractual obligation to notify State Farm if he was involved in an accident, which he admittedly failed to do. Mr. Guerrier cannot have reasonably expected State Farm to see a claim under the Rogers policy with State Farm and then search for policies potentially held by him. *See id.* § 187:57 ("[I]f the insureds differ, notice by one insured under his . . . policy will not be considered notice by another insured under . . . her policy."). Plus, Mr. Guerrier had reported accidents to State Farm in the past, meaning he was no stranger to this process. Indeed, Mr. Guerrier has not argued that State Farm's reporting procedures *themselves* were unreasonable, instead insisting just that this particular accident was not worth reporting. That is plainly not bad faith on the part of the insurer.

Therefore, the Court finds that there is no genuine dispute that State Farm did not act in bad faith and grants State Farm's motion for summary judgment on Counts I and II.

## II. There Is No Genuine Dispute That State Farm Did Not Breach the Terms of Mr. Guerrier's Insurance Contract

As part of Mr. Guerrier's insurance contract with State Farm, State Farm agreed to subrogate on his behalf. Mr. Guerrier reasons that State Farm breached that contract by failing to defend Mr. Guerrier in the subrogation action initiated by State Farm (*i.e.*, by not subrogating on behalf of Mr. Guerrier against itself on behalf of the Rogers).

To state a claim for breach of contract under Pennsylvania law, a plaintiff must allege: "(1) the existence of a contract, including its essential terms, (2) a breach of the contract[,] and, (3) resultant damages." *Meyer, Darragh, Buckler, Bebenek & Eck, P.L.L.C. v. Law Firm of Malone Middleman, P.C.*, 137 A.3d 1247, 1258 (Pa. 2016). Under Pennsylvania contract law, "[a] contract is ambiguous if it is reasonably susceptible of different constructions and capable of being understood in more than one sense." *Trizechahn Gateway LLC v. Titus*, 976 A.2d 474, 483 (Pa. 2009) (internal quotation marks omitted). "[W]hile ambiguous writings are interpreted by the

finder of fact, unambiguous ones are construed by the court as a matter of law." *Id.* Thus, a motion for summary judgment is appropriate on a breach of contract claim "where a plaintiff's claim is foreclosed by the plain language of the contract." *Allegheny Design Mgmt., Inc. v. Travelers Indem. Co. of Am.*, 572 F. App'x 98, 100 (3d Cir. 2014).

The parties do not dispute that they had a contract or that Mr. Guerrier failed to timely notify State Farm of his March 2009 accident with the Rogers. Nonetheless, Mr. Guerrier now argues that State Farm cannot escape its contractual subrogation obligations just because Mr. Guerrier did not notify it. But this argument fails as well.

First, to breach an insurance contract, the insured must present a claim to the insurer, which the insurer must deny. *See Erie Ins. Exch. v. Bristol*, 174 A.3d 578, 589–90 (Pa. 2017); *Couch on Insurance* § 207:8. Mr. Guerrier presented no claim to the insurer and State Farm did not deny any such claim. So this is a nonstarter.

Second, the case Mr. Guerrier relies on for his breach of contract theory simply does not apply to this case. It is true, as Mr. Guerrier points out, that in *Brakeman v. Potomac Ins. Co.*, the Pennsylvania Supreme Court held that "where an insurance company seeks to be relieved of its obligations under a liability insurance policy on the ground of late notice, the insurance company will be required to prove that the notice provision was in fact breached and that the breach resulted in prejudice to its position." 371 A.2d 193, 198 (Pa. 1977). But that is plainly not what happened here. Once Mr. Guerrier notified State Farm of the March 2009 accident, State Farm investigated the claim, determined Mr. Guerrier's contract covered the accident, and discontinued its subrogation proceeding on behalf of the Rogers against him. In other words, State Farm never sought to be relieved of its obligations under the contract. Thus, this tact, too, fails.

Therefore, the Court grants State Farm's motion for summary judgment as to Count III of Mr. Guerrier's complaint.

### III. There Is No Genuine Dispute That State Farm Did Not Violate the Pennsylvania Unfair Trade Practices and Consumer Protection Law

Mr. Guerrier does not contest that summary judgment should be granted in favor of State Farm on his claim for a violation of the Pennsylvania Unfair Trade Practices and Consumer Protection Law, 73 Pa. Stat. § 201-1 *et seq*. This is because, as State Farm rightly points out, "[t]he UTPCPL applies to the *sale* of an insurance policy, it does not apply to the *handling* of insurance claims." *Wenk v. State Farm Fire & Cas. Co.*, 228 A.3d 540, 550 (Pa. Super. Ct. 2020). Therefore, the Court grants State Farm's motion for summary judgment as to Count IV of Mr. Guerrier's complaint.

### IV. There Is No Genuine Dispute That State Farm Did Not Wrongfully Use the Civil Process Against Mr. Guerrier

Finally, Mr. Guerrier claims that State Farm is liable to him for engaging in the wrongful use of civil proceedings in violation of 42 Pa. Cons. Stat. § 8351. Under that statute, a party may be held liable for "tak[ing] part in the procurement, initiation or continuation of civil proceedings against another" if:

> (1) He acts in a grossly negligent manner or without probable cause and primarily for a purpose other than that of securing the proper discovery, joinder of parties or adjudication of the claim in which the proceedings are based; and
>
> (2) The proceedings have terminated in favor of the person against whom they are brought.

42 Pa. Cons. Stat. § 8351(a). An individual has probable cause to prosecute an action if he "believes in the existence of the facts upon which the claim is based" and either:

> (1) Reasonably believes that under those facts the claim may be valid under the existing or developing law; . . . [or]
> (3) Believes as an attorney of record, in good faith that his procurement, initiation or continuation of a civil cause is not intended to merely harass or maliciously injure the opposite party.

9

42 Pa. Cons. Stat. § 8352. "Gross negligence is defined as the want of even scant care and the failure to exercise even that care which a careless person would use." *Keystone Freight Corp. v. Stricker*, 31 A.3d 967, 973 (Pa. Super. Ct. 2011).

Even if a plaintiff can show either a lack of probable cause or gross negligence, that party must show, in addition, that "the underlying action was filed for an improper purpose." *Schmidt v. Currie*, 470 F. Supp. 2d 477, 480 (E.D. Pa. 2005), *aff'd*, 217 F. App'x 153 (3d Cir. 2007). "Where the underlying action was filed or maintained without justification, an improper purpose may be inferred." *Id.*

Mr. Guerrier has not demonstrated that State Farm lacked probable cause to initiate subrogation. Nor could he. State Farm paid the Rogers' claims. Mr. Guerrier never reported the accident, nor did he respond to State Farm's letter requesting the name of his insurance company. Based on the information it had before it, State Farm clearly had probable cause to seek to recover that amount from Mr. Guerrier, who was believed to be uninsured. Mr. Guerrier has not pointed to any evidence demonstrating that State Farm filed the subrogation suit for an improper purpose, such as to annoy him or to knowingly avoid its obligations to him under the insurance contract. *Cf. Keystone Freight Corp.*, 31 A.3d at 972–74 (affirming trial court's dismissal of wrongful-use-of-civil-proceedings claim where estate of deceased driver initiated wrongful death suit against tractor-trailer driver's employer even after deceased driver's death was determined to be due to natural causes and not the accident). Therefore, the Court grants State Farms motion for summary judgment as to Count V of Mr. Guerrier's complaint.

## Conclusion

For the foregoing reasons, the Court grants State Farm's motion for summary judgment in full. An appropriate order follows.

BY THE COURT:

_____
GENE E.K. PRATTER
UNITED STATES DISTRICT JUDGE
